UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
ARAMINTA ROA,                                         :
                            Plaintiff,                :
                                                      :        **OPINION AND ORDER**
v.                                                    :
                                                      :        16 CV 1745 (VB)
STAPLES, INC., STAPLES THE OFFICE                     :
SUPERSTORE EAST, INC., and STAPLES                    :
CONTRACT AND COMMERCIAL, INC.,                        :
                            Defendants.               :
--------------------------------------------------------------x

Briccetti, J.:

Plaintiff Araminta Roa brings this action against her former employers, defendants

Staples, Inc.; Staples the Office Superstore East, Inc.; and Staples Contract and Commercial,

Inc., claiming disability discrimination under both Title I of the Americans with Disabilities Act

of 1990 ("ADA"), 42 U.S.C. § 12111, and the New York State Human Rights Law

("NYSHRL"), N.Y. Exec. Law § 290.  Specifically, plaintiff alleges defendants terminated her

employment because of her disabilities.

Before the Court is defendants' motion for summary judgment.  (Doc. #39).

For the reasons set forth below, the motion is DENIED.

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1367(a).

**BACKGROUND**

The parties have submitted briefs, statements of fact, and declarations with supporting

exhibits, which reflect the following factual background.

In May 2004, defendants hired plaintiff as a picker in the production department at

defendants' Montgomery, New York, facility.  In 2007, plaintiff became an associate in the bulk

department.  In the bulk department, associates prepared merchandise for shipment to customers,

which often required lifting and moving large objects, either manually or with equipment, such

1

as a jack. Beginning in or around 2011 and until plaintiff's termination on July 13, 2015, Francisco Upia was plaintiff's supervisor.

The written job description for bulk department associates contained a twelve-item list of "Primary Responsibilities":

- Operate material handling equipment to move product within the warehouse
- Check-in inbound product and tag product accordingly
- Perform various receiving functions, such as unloading trucks and putting away product in the correct overstock location
- Maintain pick locations by cutting product open and placing product in primary picking locations
- Break[] down pallets of returned product, match item quantity and description to returned packing slip and note any difference
- Organize orders to be picked in an efficient manner
- Select full case and break pack orders by pulling, stacking and labeling merchandise and bringing it to the staging area
- Inspect all power equipment and complete the safety inspection sheet before operation
- Follow all of the safety procedures
- Stack empty pallets; clean and sweep work area and remove trash regularly
- Perform all tasks to ensure a safe work environment
- Work as a team member by interacting and communicating with fellow associates in a cooperative, constructive manner

(Bernbach Decl., Ex. 13). The written job description also lists the following "Physical Demands":

Physical demands described here are representative of those that must be met by an employee to successfully perform the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

Work requires moderate physical effort and use of motor skills requiring manual dexterity. While performing duties of this job, employees will regularly sit, stand, walk, stoop, kneel and crouch. Employee may lift, push or pull boxes/merchandise weighing between 70 pounds and 100 pounds by hand. Require physical effort associate with using the personal computer and RF scanners to enter information. Must be able to read and hear verbal instructions or through a headset.

(Bernbach Decl., Ex. 13).

Beginning in 2013, plaintiff was diagnosed with several medical conditions that required restrictions on her work, which increased over time. At the time of plaintiff's termination, these restrictions prevented plaintiff from lifting greater than ten pounds, raising and reaching her arms above her shoulders, turning and twisting her neck, operating electric machinery, and performing repetitive motions. Defendants placed plaintiff on "light duty" for the duration of her tenure.

According to defendants' policy, light duty was generally a temporary modification, not to exceed six months. Because plaintiff was restricted from operating machinery, plaintiff routinely operated a non-electric, manual pallet jack, which resulted in reduced productivity. At times, plaintiff would have trouble moving objects necessary to perform various tasks, but her co-workers would voluntarily assist her. For example, plaintiff's co-workers would sometimes stay after their shifts ended to help plaintiff by moving objects so plaintiff could clean around the bulk department.

On February 18, 2015, Upia, plaintiff's supervisor, sent an email regarding plaintiff to Gina Lee, defendants' human resources manager for the Montgomery facility. Upia asked, "Do we know how long we have to accommodate Araminta Roa?" and stated that although he had plaintiff working "within her weight restrictions," plaintiff's condition was "getting worst and not better," and that she had only been "hitting just 40% of her individual productivity."[1] (Bernbach Decl., Ex. 17). Lee responded by offering to speak to Upia: "I'll bring you up to speed on what I've been doing." Id.

---

[1]     In his deposition, Upia testified that, despite plaintiff's restrictions and accommodations, plaintiff was no less productive or limited in the amount of work she could do.

On March 20, 2015, Upia emailed Lee and Nicole Barchi, a coordinator in the human resources department, to recommend that plaintiff's compensation be reduced because her restrictions prevented her from operating machinery. Lee responded as follows:

> It sounds logical – but unfortunately Araminta is being accommodated in her current position . . . and must be paid at that rate. Under . . . disability laws, we cannot remove her pay. In addition, her injury cases have gone into litigation so it is important we don't make any changes at this time. I am working . . . on her situation – I know it's been a long time but I promise there will be a resolution.

(Bernbach Decl., Ex. 25).

On July 10, 2015, Paul Dowd, a loss prevention associate for defendants, received a complaint from Willie Carley, another of defendants' employees, that Carley's bag of chips had been stolen from his lunch bag in the cafeteria refrigerator. Dowd testified he did not remember exactly how he investigated this complaint. However, he did say that, based on his usual practice, he likely reviewed surveillance camera footage from the cafeteria to determine where and when Carley placed his lunch bag in the refrigerator and reviewed subsequent footage to see who might have taken something out of Carley's bag. Dowd testified he reviewed the video, which in his opinion showed plaintiff reach into Carley's bag, remove an indiscernible item, and walk away with the item clasped under her arms. Dowd also said plaintiff had been a suspect in the theft of another employee's yogurt from the refrigerator a few months earlier.

The record reflects the investigation was conducted in an unusual fashion. Dowd testified he relied solely on Carley's complaint for his belief that Carley's lunch bag contained a bag of chips; that is, other than Carley's complaint, Dowd had no evidence regarding the contents of the lunch bag, in part because Dowd could not verify the contents of the lunch bag from the video footage. Moreover, Dowd did not preserve the video footage of Carley placing his lunch bag in the refrigerator, which was necessary for Dowd's determination that plaintiff

reached into Carley's bag. Dowd testified his investigation did not reveal conclusive evidence that plaintiff took Carley's bag of chips. And Lee testified she did not review the video evidence before approving plaintiff's termination, and the termination decision was not so urgent that she could not have waited to view the video before approving it.

Dennis Salvucci, a loss prevention manager, testified the portion of the video showing where Carley placed his bag should have been saved. Salvucci further testified that, usually when he is investigating a theft accusation, he goes beyond the video evidence and interviews people to gather information, including the complainant and the accused. Here, there is no evidence Salvucci interviewed Carley or third parties, and the evidence is disputed as to whether Salvucci interviewed plaintiff. Barchi testified that even if plaintiff had stated she took the bag of chips by accident, plaintiff still would have been terminated based on the video footage. This is in spite of the facts that (i) Barchi could at best only assume plaintiff had taken chips from Carley's bag based on the video footage, and (ii) Lee testified that an honest mistake would not be theft.

Dowd sent the video of plaintiff and a summation of the events to Salvucci, who reviewed the information and forwarded it to Barchi. Barchi testified plaintiff was terminated as a result of this investigation, which was comprised solely of a discussion with Carley and a review of the video.[2]

On July 13, 2015, Barchi had a meeting with plaintiff and Upia, during which Barchi informed plaintiff of her termination because of the theft of Carley's bag of chips. In that meeting and in her deposition, plaintiff admitted she took a bag of chips, but asserted that her

---

[2]     The record is unclear as to who actually made the decision to terminate plaintiff. Barchi said Lee made the decision. Lee said she approved the decision, but that Barchi and Salvucci made the decision. Salvucci said he did not make the decision.

sister, Lila Sanchez, left it for her.  Plaintiff said she did take Carley's bag of chips, but it was an honest mistake, not theft.

## DISCUSSION

I.    <u>Legal Standard</u>

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law. . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  <u>Wilson v. Nw. Mut. Ins. Co.</u>, 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  <u>Zalaski v. City of Bridgeport Police Dep't</u>, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which she has the burden of proof, then summary judgment is appropriate.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 249–50.  The non-moving party "must do more than simply show that there is some

metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted). The "mere existence of a scintilla of evidence in support" of the non-moving party's position is likewise insufficient; "there must be evidence on which the jury could reasonably find" for her. Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial. Nora Bevs., Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II.     ADA Claim

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to," among other things, the "discharge of employees." 42 U.S.C. § 12112(a). Disability discrimination claims are evaluated under the familiar burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 96 (2d Cir. 2009). The McDonnell Douglas analysis proceeds in three steps: "A plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate

non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006).

The Court discusses each step in turn.

A.    Prima Facie Case

"To establish a prima facie case under the ADA, a plaintiff must show by a preponderance of the evidence that: (1) [her] employer is subject to the ADA; (2) [she] was disabled within the meaning of the ADA; (3) [she] was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [she] suffered adverse employment action because of [her] disability." Sista v. CDC Ixis N. Am., Inc., 445 F.3d at 169 (internal quotation marks admitted).  Making out a prima facie ADA case requires plaintiff to make only a de minimis showing.  Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001).

Defendants argue plaintiff has not satisfied the third and fourth elements.

The Court disagrees, as there are material issues of fact as to both elements.

1.    Qualified Individual

The ADA proscribes a covered entity from "discriminat[ing] against a qualified individual of the basis of disability."  42 U.S.C. § 12112(a).  A "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

To determine the essential functions of a job, "a court must conduct a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice."  McMillan v. City of New York, 711 F.3d 120, 126 (2d Cir. 2013) (internal quotation

marks omitted).  Evidence of an essential function includes, but is not limited to, (i) "the employer's judgment as to which functions are essential," (ii) a written job description, (iii) "the amount of time spent on the job performing the function," and (iv) "the work experience of past incumbents in the job."  29 C.F.R. § 1630.2(n)(3)(i–vii).

When a plaintiff cannot perform the essential functions of her position without accommodation at the time of the adverse employment action, she must show that reasonable accommodations existed that would permit her to perform those essential functions.  See, e.g., Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 137–38 (2d Cir. 1995).  A "reasonable accommodation" may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position . . . modification of equipment or devices . . . and other similar accommodations for individuals with disabilities."  42 U.S.C. § 12111(9)(B).  However, "[a] reasonable accommodation can never involve the elimination of an essential function of a job." Shannon v. N.Y.C. Transit Auth., 332 F.3d 95, 100 (2d Cir. 2003).  On defendants' motion for summary judgment, "[i]t is enough for a plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits.  Once plaintiff has done this, she has made out a prima facie showing that a reasonable accommodation is available."  Borkowski v. Valley Cent. Sch. Dist., 63 F.3d at 138.

Defendants argue there were at least two essential functions of the bulk associate position that plaintiff could not perform, with or without reasonable accommodation; namely, moving heavy objects, and operating electric machinery.

First, defendants argue that lifting, pushing, and pulling heavy objects was an essential function of a bulk associate.  Defendants cite the written job description for an associate in the bulk department, which provides that bulk associates "lift, push or pull boxes/merchandise

weighing between 70 pounds to 100 pounds by hand" **(**Bernbach Decl., Ex. 13), and plaintiff's testimony that bulk associates performed such tasks.

However, a written job description is not determinative of the essential functions of a position.  See, e.g., McMillan v. City of New York, 711 F.3d at 126.  And even if a job description were determinative, the written description here is not as definitive as defendants assert.  For example, the language immediately preceding the language quoted by defendants provides that bulk associates "may" perform the quoted tasks (Bernbach Decl., Ex. 13 (emphasis added)), at least suggesting that such tasks may not be required, and therefore may not be essential to the position.

Furthermore, even if lifting, pushing, and pulling heavy objects were essential, there is sufficient evidence to find reasonable accommodations were available.  For example, plaintiff testified that defendants accommodated her by placing her on light duty and limiting her functions to be in compliance with her various restrictions.  She further testified co-workers would sometimes assist her in moving objects.  Such co-worker assistance may be a reasonable accommodation.[3]  Moreover, Upia testified plaintiff's restrictions and accommodations did not negatively affect her productivity, suggesting plaintiff could perform the essential functions.

Second, defendants argue that operating electric machinery—namely, an electric pallet jack—was an essential function of plaintiff's position, for which a reasonable accommodation was not available.

---

[3]    Importantly, the evidence does not suggest plaintiff completely avoided performing whole swaths of her duties by passing them off to her co-workers, which may not be a reasonable accommodation.  Compare Borkowski v. Valley Cent. Sch. Dist., 63 F.3d at 140 ("providing an assistant to help with a job may be an accommodation that does not remove an essential function of the job from the disabled employee") with Stevens v. Rite Aid Corp., 851 F.3d 224, 231 (2d Cir. 2017) (finding defendant not required to grant plaintiff exemptions where other employees would have performed plaintiff's essential duties).

Defendants again rely on the written job description, which states that the operation of "material handling equipment" is a "primary responsibility." (Bernbach Decl., Ex. 13).

However, this argument suffers the same deficiencies described above; namely, a written job description is just one consideration in a fact-intensive inquiry, and the language of the job description does not speak definitively regarding this function. Although the job description speaks of the operation of "material handling equipment," it is unclear as to the nature of such equipment or whether such equipment must be electric, as defendants contend.

Moreover, even if the Court were to find the operation of an electric pallet jack was an essential function, there is still an issue of fact regarding whether a reasonable accommodation existed. Plaintiff testified that although many bulk associates used electric pallet jacks, she performed the same functions using a manual pallet jack. A reasonable jury could find the use of a manual pallet jack instead of an electric jack is a reasonable accommodation. See, e.g., 42 U.S.C. § 12111(9)(B) (stating that "modifications of equipment or devices" can be a reasonable accommodation).

2.     Discriminatory Intent

"To satisfy her burden on the fourth prong of her prima facie claim, [plaintiff] must show that she was terminated under circumstances that give rise to an inference of discriminatory intent." Primmer v. CBS Studios, Inc., 667 F. Supp. 2d 248, 259 (S.D.N.Y. 2009). Indicia of discriminatory intent include, but are not limited to, "actions or remarks made by decisionmakers, . . . a pattern of recommending the plaintiff for positions for which he or she is not qualified . . . [and], more generally, upon the timing or sequence of events leading to the plaintiff's termination." Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996).

Replacing a disabled employee with a non-disabled employee also evinces discriminatory intent. Costello v. St. Francis Hosp., 258 F. Supp. 2d 144, 154 (E.D.N.Y. 2003).

Based on the record evidence, viewed in plaintiff's favor, a reasonable jury could find sufficient indicia of discriminatory intent.

Such evidence includes Upia's behavior regarding plaintiff. For example, plaintiff testified Upia often expressed dissatisfaction with plaintiff's restrictions, commented on her extended light-duty status, made demeaning gestures and expressions about plaintiff's disabilities, and assigned her undesirable tasks, such as cleaning. Moreover, the record contains emails from Upia to Lee expressing frustration at plaintiff's reduced productivity because of her disabilities and suggesting plaintiff's compensation be reduced. Lastly, defendants replaced plaintiff with an employee who could operate the electrical pallet jack. The totality of these factors is enough to satisfy plaintiff's de minimis burden for the fourth prong of her prima facie case. See Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d at 91.

Defendants claim this evidence is not probative because (i) Upia made these statements long before plaintiff's termination and (ii) Upia was not involved in the termination decision.

The Court looks at the following factors in determining the probative value of purportedly discriminatory statements:

> (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process).

Henry v. Wyeth Pharm., Inc., 616 F.3d 134, 149 (2d Cir. 2010).

First, even though Upia did not make the ultimate decision to terminate plaintiff, Upia was plaintiff's direct supervisor, made some of these statements to decisionmakers in plaintiff's termination, and was at least involved in plaintiff's termination.

Second, although some of the alleged remarks and gestures took place at an unknown time, the emails were only four to five months before plaintiff's termination. There is no bright-line rule as to when a statement becomes too temporally attenuated from the adverse employment action to be probative. See Sethi v. Narod, 12 F. Supp. 3d 505, 540 (E.D.N.Y. 2014). Moreover, other district courts in this circuit have found more temporally removed statements to be probative. See Papalia v. Milrose Consultants, Inc., 2011 WL 6937601, at *12 (S.D.N.Y. 2011) (finding a gap of one year between plaintiff's demotion and the discriminatory comments to be probative); see also Dupree v. UHAB-Sterling St. Hous. Dev. Fund Corp., 2012 WL 3288234, at *7 n.7 (E.D.N.Y. 2012) (finding a remark made six months before plaintiff's discharge to "not significantly weaken its probative value").

Third, the fact that Upia made such statements to higher-level decisionmakers without the decisionmakers reprimanding or condemning the behavior, again viewed in plaintiff's favor, could reasonably be interpreted as at least tacitly condoning the discrimination.

Fourth, given the context of these remarks, they could reasonably be interpreted as influencing the decisionmaking process, especially due to the consistent nature of the remarks over time. Contra Danzer v. Norden Sys., Inc., 151 F.3d 50, 56 (2d Cir. 1998) (finding that "'stray remarks' alone do not support a discrimination suit").

In addition to Upia's conduct, the record evidence regarding "the sequence of events leading to plaintiff's discharge," Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir. 2001), reasonably supports a finding of defendants' discriminatory intent, especially with

respect to defendants' theft investigation and termination of plaintiff; a reasonable jury could find that the investigation was perfunctory and inadequate, given that a long-time employee was terminated as a result.

Discriminatory intent is further evinced by the fact that the alleged theft in question was a one-time event involving a single-serving bag of chips, rather than a pattern of thefts[4] or theft of a valuable item.  Moreover, the evidence to support defendants' conclusion that plaintiff <u>stole</u> the bag of chips was weak; namely, Carley's complaint that somebody took his chips and a very poor-quality video showing only what plaintiff already admits, that she took a bag of chips from the refrigerator.  Furthermore, the undisputed evidence reflects that defendants failed to preserve crucial evidence used to make the finding of theft and failed to interview a crucial witness in Sanchez (Roa's sister), and there is an issue of fact as to whether defendants interviewed the accused.  Finally, Lee approved plaintiff's termination without reviewing the video evidence.

B.  <u>Non-Discriminatory Reason for Plaintiff's Termination</u>

As to the second step of the <u>McDonnell Douglas</u> analysis, defendants bear the burden of putting forth a legitimate, non-discriminatory reason for plaintiff's termination.  <u>McBride v. BIC Consumer Prods. Mfg. Co.</u>, 583 F.3d at 96.

Defendants assert and plaintiff does not contest that the legitimate, non-discriminatory reason for terminating plaintiff was her theft of the bag of chips.  <u>See</u>, <u>e.g.</u>, <u>Crews v. Trs. of Columbia Univ.</u>, 452 F. Supp. 2d 504, 523 (S.D.N.Y. 2006).

---

[4]     Although Dowd noted in his summary that plaintiff had been implicated a few months before in the theft of a yogurt, Dowd did not find evidence to support the implication.

C.    Pretext

At the third step of the McDonnell Douglas analysis, a plaintiff must present "sufficient admissible evidence from which a rational finder of fact could infer that more likely than not she was the victim of intentional discrimination." Bickerstaff v. Vassar Coll., 196 F.3d 435, 447 (2d Cir. 1999). "[T]he plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203 (2d Cir. 1995); accord Parker v. Columbia Pictures Indus., 204 F.3d 326, 336–37 (2d Cir. 2000) (extending the "mixed motive" analysis to ADA cases).

The burden of proving intentional discrimination "may often be carried by reliance on the evidence comprising the prima facie case, without more." Cronin v. Aetna Life Ins. Co., 46 F.3d at 203. Again, plaintiff carries a de minimis burden:

> Thus, unless the employer has come forward with evidence of a dispositive nondiscriminatory reason as to which there is no genuine issue and which no rational trier of fact could reject, the conflict between the plaintiff's evidence establishing a prima facie case and the employer's evidence of a nondiscriminatory reason reflects a question of fact to be resolved by the factfinder after trial.

Id.

Here, the substantial evidence of discriminatory intent, summarized above and viewed in plaintiff's favor, is sufficient for a reasonable jury to find defendants' purported non-discriminatory reason was pretext.

III.    NYSHRL Claim

Because "the same elements that must be proven to establish an ADA claim must be also demonstrated to prove claims under NYSHRL," plaintiff's NYSHRL claim likewise survives

defendants' motion for summary judgment.  <u>Kinneary v. City of New York</u>, 601 F.3d 151, 158

(2d Cir. 2010).

## CONCLUSION

Defendants' motion for summary judgment is DENIED.

The Clerk is instructed to terminate the motion.  (Doc. #39).

By September 18, 2017, the parties shall submit a Joint Pretrial Order in accordance with

paragraph 3(A) the Court's Individual Practices.

All counsel shall attend a case management conference on September 25, 2017, at 2:15

p.m., at which time the Court expects to set a trial date and dates for pretrial submissions.

Dated:  August 9, 2017
        White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge